UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

PORT HAMILTON REFINING AND
TRANSPORTATION, LLLP

Petitioner,

vs.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

Respondent.

Case No.: 23-1094

**PORT HAMILTON'S RESPONSE TO REQUESTED BRIEFING
ON FINAL AGENCY ACTION**

Section 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(b)(1), allows petitions for review of a "final action of the Administrator" to be brought in the appropriate circuit of the United States Court of Appeals. Pursuant to this provision, Port Hamilton Refining and Transportation, LLLP ("Port Hamilton") challenges a determination made by the United States Environmental Protection Agency ("EPA") on November 16, 2022 ("the 2022 Determination"). Exh. A.

The Court has directed the parties to brief whether EPA's Determination is a "final agency action," thereby triggering this Court's

jurisdiction. The 2022 Determination was a final agency action of the Administrator reviewable by this Court because (1) it is the culmination of EPA's decision-making and concludes that a preconstruction permit issued under the Prevention of Significant Deterioration ("PSD") provisions of the Clean Air Act[1] is required for Port Hamilton's facility; and (2) it had immediate legal consequences for Port Hamilton—it prohibits a resumption of refinery operations (and even construction preparatory to such resumption) until Port Hamilton has complied with the requirements outlined in the 2022 Determination.

The jurisdictional issue raised by the Court's order is not unique and has been resolved by this Court in favor of jurisdiction in other cases. This Court and other courts have held that EPA's Clean Air Act applicability determinations—similar to the permit-applicability determination at issue—are final agency actions. *See, e.g., TSG Inc. v. EPA*, 538 F.3d 264, 267 (3d Cir. 2008); *Star Enterprise v. EPA*, 235 F.3d

---

[1] The applicable PSD provisions of the Clean Air Act are found at 42 U.S.C. §§ 7470-7479. These provisions govern the construction or modification of major sources of emissions in areas of the United States (including the U.S. Virgin Islands) that meet the National Ambient Air Quality Standards ("NAAQS").

139 (3d Cir. 2000); *Harrison v. PPG Industries, Inc.*, 446 U.S. 578 (1980).

## I.  BACKGROUND

This proceeding arises because the 2022 Determination reversed long-standing authority for the oil refinery on St. Croix (the "St. Croix Refinery") to resume operations under its existing environmental permits.

In 2011, after decades of operation, a previous owner of the St. Croix Refinery, HOVENSA, LLC, decided to idle the refinery due to an economic downturn. Five years later, in January 2016, HOVENSA, LLC sold the still-idled refinery to Limetree Bay Terminals, LLC, which later conveyed the refinery to Limetree Bay Refining, LLC (the "Prior Owner"). *See* Exh. B (Declaration of Charles Chambers) at ¶3. The refinery was maintained in an idled state throughout this entire period.

On April 5, 2018, EPA issued a determination to the Prior Owner stating that the refinery had been idled since 2012 and that resuming operations from its idled status "will not result in the facility being viewed as a new stationary source under EPA's current so-called Reactivation Policy." Exh. C (the "2018 Determination"), at p.1. This meant that the refinery could resume operations from its idled status

under its existing permits, without the need to get a new PSD permit.[2]

EPA repeated and reinforced the 2018 Determination in 2020 when it rejected assertions that the refinery had been permanently shut down. *See* Exh. D (excerpt from November 2020 EPA Response to Comments On the Clean Air Act Plantwide Applicability Limit Permit for the Limetree Bay Terminal and Limetree Bay Refining, at pp.106-114) ("Considering the totality of the circumstances, were EPA to apply the Reactivation Policy, EPA would continue to find the presumption of permanent shutdown has been rebutted in this case.")

---

[2] The "Reactivation Policy" is comprised of several unspecified, non-binding Agency decisions related to whether PSD permit requirements apply to the reactivation of an air emission source that is shut down. *See generally* Exh. D at pp.106-114. The "Reactivation Policy" provides that an air emission source that is shut down for two or more years is *presumed* to be shut down and is subject to PSD permitting requirements upon a restart. *Id*. The "Policy," however, provides that this presumption can be rebutted such that an idled or temporarily shut down refinery can resume operations within the parameters of its existing permits. *Id*. However, if an idled refinery otherwise triggers PSD permitting requirements by making major modifications that would result in a significant net emission increase of certain pollutants, then the refinery is still required to obtain a new PSD permit. *Id.; see also* 40 C.F.R. § 52.21. Port Hamilton proposed to resume operations (at emissions levels below the maximum levels authorized by its existing permits) without any such major modifications or increases in emissions.

Armed with these assurances and supporting statements from EPA, the Prior Owner subsequently resumed refinery operations in September 2020 and operated the refinery until May 2021 when it was again idled. This resumption of operations would have been impossible had the refinery not been maintained in an idled state since 2012 (or if EPA had taken a position that the refinery had not been in an idled state since 2012).[3]

---

[3] While being operated by the Prior Owner, the St. Croix Refinery was ordered by EPA to shut down in May 2021 due to a series of environmental incidents that caused pollutants to be released into nearby communities. At the time, EPA did not claim that the refinery should have obtained a new PSD permit or that the refinery had been operating illegally because it had not obtained a new PSD permit. EPA's order was issued pursuant to section 303 of the Clean Air Act, which requires compliance within 60 days. If EPA had taken the position that the refinery was operating without a required PSD permit, it would have prohibited a resumption of operations until the Prior Owner had gone through the two-to-three-year PSD permitting process.

Subsequently, EPA and the Prior Owner entered into a joint stipulation staying a lawsuit that followed EPA's order. This joint stipulation specifies what the Prior Owner must do before resuming refinery operations. Notably, obtaining a new PSD permit is not one of the requirements. *See* Exh. E (Joint Stipulation). All these actions and inactions by EPA are inconsistent with EPA's conclusion in the 2022 Determination that the refinery was in an inactive, shut down status dating to 2012.

In reliance upon EPA's 2018 Determination and EPA's subsequent public statements and actions, Port Hamilton purchased the idled St. Croix Refinery in January 2022, with plans to resume refinery operations as soon as practicable. *See* Exh. B at ¶10. Port Hamilton proceeded to move forward with its plans to resume refinery operations by the end of 2023; only to be brought to a screeching halt when EPA reversed the 2018 Determination and informed Port Hamilton that it had changed its mind and "conclude[d] that the Refinery was permanently shut down in 2012 and that restarting the Refinery qualifies as construction of a new major stationary source under the federal PSD permitting regulations applicable in the U.S. Virgin Islands." Exh. A at p.2. EPA was unequivocal in its decision: "The Refinery must apply to EPA for, and receive, a final and effective PSD permit for these pollutants prior to restarting . . . the Refinery as defined in 40 CFR 52.21(b)(11)." *See id.* at p.3.

Until the 2022 Determination was issued, Port Hamilton was moving forward with plans to resume refinery operations. Exh. A at ¶11. The 2022 Determination has the effect of prohibiting Port Hamilton from performing necessary work to resume refinery operations without first

obtaining a PSD permit. Based upon past precedent, obtaining such a permit from EPA is likely to be a two-to-three-year process, typically followed by an additional year or more to undertake necessary work to prepare for resuming operations. EPA also asserts that these steps must occur sequentially: one must apply for—and obtain—the permit before construction work can begin. Consequently, under EPA's approach, the St. Croix Refinery cannot resume operations until 2026 or 2027 (assuming EPA ultimately issues the PSD permit it contends is needed to resume operations).

## II. EPA'S NOVEMBER 2022 DECISION WAS A FINAL AGENCY ACTION

Section 307(b) of the Clean Air Act, 42 U.S.C. § 7067(b)(1), provides for judicial review of any action undertaken by the Administrator under specifically enumerated provisions of the Act and of "*any other final action* of the Administrator." (Emphasis added.) The Supreme Court has held that the phrase "final action" has the same meaning under section 307(b)(1) that it has under the Administrative Procedure Act. *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 478 (2001). Under both the Clean Air Act and the Administrative Procedure Act, agency action is

considered final for purposes of judicial review if it (1) "marks the consummation of the agency's decision[-]making process," and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997); *Biden v. Texas*, __ U.S. __, 142 S. Ct. 2528, 2544-45 (2022). As the Supreme Court has described it, the "core question" is whether the agency has completed its decision-making process and whether the result of that process is one that will directly affect the parties. *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992).[4]

The phrase "final agency action" is given "a pragmatic definition." *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 249 (3d Cir. 2011), as amended (Mar. 7, 2012) (quoting *Exxon Corp. v. FTC*, 588 F.2d 895,

---

[4] Because the finality inquiry is a pragmatic one, it does not matter that EPA's 2022 Determination has not been published in the Federal Register; publication in the Federal Register is not a requirement for agency action to be final. *See, e.g., Her Majesty the Queen in Right of Ontario v. EPA*, 912 F.2d 1525, 1531 (D.C. Cir. 1990) (holding that two letters issued by EPA were "final action" even though they were not published in the Federal Register); *Renewable Fuels Ass'n v. EPA*, 948 F.3d 1206, 1214 (10th Cir. 2020) (similarly reviewing final agency action that was not published in the Federal Register), *rev'd sub nom.* on other grounds, *HollyFrontier Cheyenne Ref., LLC v. Renewable Fuels Ass'n*, __ U.S. __, 141 S. Ct. 2172 (2021).

901-02 (3d Cir. 1978); *see also U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 599 (2016) (holding that courts take a "pragmatic" approach to this inquiry). Consistent with that definition, this Court has identified five specific, pragmatic considerations that can assist in determining whether agency action is final:

- A. whether the decision represents the agency's definitive position on the question;

- B. whether the decision has the status of law with the expectation of immediate compliance;

- C. whether the decision has immediate impact on the day-to-day operations of the party seeking review;

- D. whether the decision involves a pure question of law that does not require further factual development; and

- E. whether immediate judicial review would speed enforcement of the relevant act.

*Minard,* 670 F.3d at 249 (citing *Univ. of Med. and Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 69 n. 7 (3d Cir. 2003)); *see also Ocean County*

*Landfill v. EPA*, 631 F.3d 652, 655 (3d Cir. 2011).[5] As explained in the following paragraphs, each of these factors supports the conclusion that the 2022 Determination was a final agency action.

### A. The 2022 Determination is EPA's definitive position and requires Port Hamilton to obtain a new PSD permit before resuming operations.

When EPA issued the 2022 Determination to Port Hamilton, the head of EPA's Office of Air and Radiation communicated that the Agency had reached its decision after completing a "detailed" evaluation of whether the refinery would require a PSD permit. *See* 2022 Determination at p.2. EPA was unequivocal in the 2022 Determination, stating "EPA has *concluded* that [Port Hamilton] is *required* to apply for and receive a final and effective PSD permit prior to restarting the Refinery or beginning actual construction as defined in 40 CFR 52.21(b)(11)"; and "the Refinery

---

[5] In *Ocean County Landfill*, this Court held that a "common control" determination made by EPA in an air permitting matter was not final agency action. 631 F.3d at 655. More specifically, this Court held that EPA's determination was merely an "intermediate step" and the state air permitting authority may opt to reject EPA's determination. *Id.* at 655-56. Unlike the determination made by EPA in *Ocean County Landfill*, the 2022 Determination has an immediate impact on the day-to-day operations at the St. Croix Refinery and the determination was made by the agency directly responsible for issuing the air permit at issue.

*must* apply to EPA for, and receive, a final effective PSD permit for these pollutants prior to restarting or beginning actual construction at the Refinery, as defined in 40 CFR 52.21(b)(11)." 2022 Determination at p.1. (Emphasis added.)

This Court has found similar determinations by EPA to constitute final agency action. In *Star Enterprise,* for example, the petitioners challenged EPA's determination that two stationary gas turbines at a refinery were subject to regulation under another Clean Air Act regulatory program—the New Source Performance Standards ("NSPS") for Petroleum Refineries.[6] 235 F.3d at 145. The Court confirmed the determination at issue satisfied the *Bennett* requirements, describing it as the "consummation of the agency's decision[-]making process." *Id.* at 145, n. 9; *see also Harrison*, 446 U.S. at 587 (holding that EPA's applicability determination constituted the "consummation of the agency's decision[-]making process" and that "short of an enforcement

---

[6] A determination of NSPS applicability is analogous to the 2022 Determination because, in both circumstances, EPA reviews a set of facts specific to the regulated entity in the light of its regulations and then decides whether the regulated entity must comply with the requirements of a specific EPA regulatory scheme.

11

action, EPA has rendered its last word on the matter").

Here, EPA acknowledges that its 2022 Determination was the consummation of its internal deliberations and decision-making process. As stated in the 2022 Determination (Exh. A at p.2):

> EPA has completed its review . . . and closely examined the facts and circumstances of the Refinery since it was shut down . . . . EPA's examination was informed by the Agency's longstanding Reactivation Policy . . . . * * * Based on EPA's analysis of the specific factors in the Reactivation Policy, we conclude that the Refinery was completely shut down in 2012 and that restarting the Refinery qualifies as construction of a new major stationary source under federal PSD permitting regulations . . . .

Further evidence of the Agency's analysis and consummation of the decision-making process can be found in the lengthy attachments included with 2022 Determination—one containing EPA's analysis under its Reactivation Policy, and one describing the Agency's positions regarding legal support for the Policy. *See id.,* Attachments 1 and 2. This Court need look no further than these documents, which explain the Agency's decision-making process that culminated in the issuance of the 2022 Determination. *See Hawaiian Elec. Co. v. EPA*, 723 F.2d 1440, 1442 (9th Cir. 1440) (finding that EPA's "classification of the fuel switch as a

[PSD] major modification represents EPA's final statement on the legal issues, and no future event will aid the court's consideration.").

### B. The 2022 Determination has the status of law with the expectation of immediate compliance.

The 2022 Determination leaves no room for ambiguity as to its legal import:

> [T]he Refinery *must* apply to EPA for, and receive, a final effective PSD permit for these pollutants prior to restarting or beginning actual construction at the Refinery, as defined in 40 CFR 52.21(b)(11). The PSD permit application should include, among other information, analyses of air quality impacts, environmental justice, and Best Available Control Technology.

Exh. A at p.3. The above language is not advisory. If Port Hamilton were now to resume operations without a PSD permit, EPA's 2022 Determination makes it clear that Port Hamilton is subject to immediate enforcement action by EPA.

These prohibitions and obligations reflect the reality that "rights or obligations have been determined" and "legal consequences will flow" from EPA's decision. *See Hawkes Co., Inc. v. U.S. Army Corps of Eng'rs*, 782 F.3d 994, 1000-02 (8th Cir. 2015) (finding legal consequences and final agency action where plaintiffs were left with unsatisfactory options

of ceasing operations, seeking a permit at great expense and delay, or refusing compliance and risking enforcement action against it); *see also TSG Inc.,* 538 F.3d at 267 (finding legal consequences where petitioner was obligated to abide by a particular hazardous air pollutant control standard); *see also Hawaiian Elec.,* 723 F.2d at 1442 (holding that EPA's decisions impacting even *interim* steps in the PSD permitting process, such as EPA's actions on a permit application, can constitute final agency action because they have immediate legal consequences).

The 2022 Determination does what all agency final actions do—"[i]t commands, it requires, it orders, and it dictates." *Appalachian Power Co. v. EPA* 208 F.3d 1015, 1023 (D.C. Cir. 2000) (concluding that EPA guidance has legal consequences and is therefore reviewable as final agency action). Withholding judicial review in such cases would "force a party, as a practical matter, to comply with an agency ruling that it believes unlawful." *Hawaiian Elec.,* 723 F.2d at 1444 (internal citations removed).

### C. The 2022 Determination has an immediate impact upon the day-to-day operations of Port Hamilton.

EPA's conclusion that the St. Croix Refinery must go through a PSD permit process before it can resume operations has immediate, concrete, and costly consequences for Port Hamilton. To comply with EPA's PSD regulations, Port Hamilton must, *inter alia,* delay the resumption of refinery operations for two to three years, model its potential future emissions, assess the "Best Available Control Technology" for each of the units to return to operating status, and install such controls prior to resumption of operations. *See generally* 40 C.F.R. Part 52 (PSD regulatory requirements); *see also* Exh. A, at p.3.

Left undisturbed, the 2022 Determination means Port Hamilton will have to wait until 2026 or 2027 before resuming operations. The prospect of this kind of delay, coupled with the uncertainty that is inherent in the outcome of any PSD permitting process, jeopardizes Port Hamilton's plan to operate the refinery and threatens its very existence. This extended schedule also adds substantial costs to the process of resuming operations, rendering it uneconomic to pursue. If operation of the refinery is delayed for a period of years, Port Hamilton may have to abandon its

plans and instead shut down and dismantle the refinery, with devastating consequences for the local economy, including the elimination of jobs and tax revenue that otherwise would be generated by a resumption of operations. *See* Exh. B, ¶¶12, 14-15; *see also* U.S. Virgin Islands, Bureau of Economic Research, *U.S. Virgin Islands Economic Impact: Closing of Limetree Bay Refinery* (Oct. 13, 2021) ("VIBER Analysis") *available at* https://usviber.org/document/economic-impacts-of-the-limetree-bay-closing/.

### D. The 2022 Determination involves a pure question of law that does not require further factual development.

The basic facts and circumstances behind the idling of the St. Croix Refinery are not in dispute. While Port Hamilton may dispute EPA's *characterization* of certain events (or its omission of other important facts) in the 2022 Determination, Port Hamilton's disagreements derive more from misplaced conclusions EPA reaches based on that history. No further factual development will alter EPA's conclusion.

### E. Immediate judicial review will speed Port Hamilton's ability to resume operations.

The St. Croix Refinery is at a crossroads. If the refinery is able to resume operations as EPA repeatedly agreed it could in the past, the St. Croix Refinery will bring back additional workers to assist in the resumption of refinery operations as expeditiously as possible, subject to the safety and environmental requirements of its operating permit recently re-issued by the Virgin Islands Department of Planning and Natural Resources. *See* Exh. F (VIDPNR Permit). If the 2022 Determination blocks Port Hamilton from resuming operations, however, the St. Croix Refinery will, at best, remain idle for years or, at worst, commence the closure and dismantling of this important energy provider and economic engine. *See* VIBER Analysis, *supra*. The fate of the St. Croix Refinery depends entirely upon access to, and the outcome of, judicial review of the 2022 Determination.

## III.　CONCLUSION

The 2022 Determination—that the St. Croix Refinery requires a new PSD permit prior to resuming operations—is a final agency action. This Court therefore has jurisdiction over Port Hamilton's petition.

Date: February 3, 2023

Respectfully submitted,

/s/ Andrew C. Simpson
Andrew C. Simpson
V.I. Bar No. 451
ANDREW C. SIMPSON, PC
2191 Church St., Ste. 5
Christiansted, VI 00820
340.719.3900
asimpson@coralbrief.com
www.coralbrief.com

*Counsel for Port Hamilton Refining and Transportation, LLLP*

Matthew W. Morrison
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC 20036
202.663.8036
matthew.morrison@pillsburylaw.com

Julie R. Domike
BABST|CALLAND
505 9th St. NW
Suite 602
Washington, DC 20004
jdomike@babstcalland.com
202.853.3453

Gary E. Steinbauer
BABST|CALLAND
Two Gateway Center
Pittsburgh, PA 15222
412.394.6590
gsteinbauer@babstcalland.com

*Co-Counsel for Port Hamilton Refining and Transportation, LLLP*

# CERTIFICATE OF SERVICE

I certify that on February 3, 2023, I served the Response to Requested Briefing on Final Agency Action by using the Court's electronic filing system, which will deliver a Notice of Filing to:

HEATHER E. GANGE
D.C. Bar No. 452615
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Telephone No: (202) 514-4206
Heather.Gange@usdoj.gov

Counsel for Respondent

/s/ Andrew C. Simpson