IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

PORT HAMILTON REFINING AND
TRANSPORTATION, LLLP

      PETITIONER,

VS.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

      RESPONDENT.

CASE NO. 23-1094

**OPPOSITION TO LIMETREE BAY TERMINAL'S
MOTION TO INTERVENE**

You can change your mind, but not your facts. In 2018, proposed intervenor Limetree Bay Terminals, LLC ("LBT") successfully demonstrated to the satisfaction of the United States Environmental Protection Agency ("EPA") that, as a matter of fact, the oil refinery on St. Croix had been in idled status since 2012. Now, for motives that are not disclosed by LBT, it has flip-flopped. LBT seeks to intervene to urge the exact opposite position that it took in 2018. This Court should not countenance such gamesmanship. LBT's motion to intervene should be denied.

## Background

This petition for review arises because in 2022 EPA reinterpreted, or misinterpreted, the same facts that it had previously relied upon when concluding in 2018 that the oil refinery on St. Croix ("the refinery") had been in idled status since 2012. In the span of four-and-a-half years, the EPA had a change of heart and reached the diametrically opposite conclusion and stated in November 2022 that the refinery had been permanently shutdown—rather than idled—since 2012 (notwithstanding the fact that portions of the refinery never ceased to operate and that the refinery actually resumed production of refined products in 2020–21).

The primary source of the information that EPA relied upon in 2018 was proposed intervener LBT. *See* Doc. No. 12-2 at ECF p.6[1] (Attachment 1 to November 16, 2022 EPA Determination at 2) (claiming that EPA's April 5, 2018 Determination was "based on the information provided by Limetree [Bay Terminals]"). In January 2018, if not earlier, LBT began to submit information to EPA to support its position that the refinery had

---

[1] Unless otherwise indicated, all references to "Doc. No." refer to the document number assigned by this Court's ECF filing system to documents filed under the case number assigned to the instant petition for review.

2

been in an idled status since 2012. This culminated in a February 1, 2018 letter from LBT in which it formally requested EPA's "concurrence that the idled refinery units that will be restarted as part of the MARPOL project will not be treated as new units under EPA's 'reactivation policy.'" Exh. 1 (Feb. 1, 2018 letter), p.1. As stated in that letter, LBT's position was that "the stationary source was never shutdown" and "neither LBT nor the prior owner of the facility, HOVENSA, LLC, intended for the 2011 and 2012 idling of the refinery units to be permanent." *Id.* LBT summarized its argument, *id.*, p.2, and then detailed the substantial evidence that supported its argument in a 19-page "timeline" attached to the letter. Exh. 1, pp.11-29.

LBT's efforts paid off. On April 5, 2018, EPA concluded that the oil refinery on St. Croix ("the refinery") had been in an idled status since 2012. See Doc. No. 12-4 ("April 5, 2018 EPA Determination"). Three weeks after receiving the April 5, 2018 EPA Determination, LBT spun off the refinery into an "affiliated company," Limetree Bay Refining, LLC ("LBR"). *See* Doc. No. 17-2, ECF. p.406. However, LBT remained a permittee on the permit that is the underlying subject of this appeal (the "MARPOL

permit")[2] and provided, at a minimum, infrastructure and administrative support to its affiliate as it began the process to recommence refinery operations under the MARPOL permit.

As alleged by the United States in *United States of America v. Limetree Bay Refining, LLC and Limetree Bay Terminals, LLC*, Case No. 1:21-cv-00264 pending in the District Court of the Virgin Islands ("DVI action"), LBT and LBR collectively began restarting refinery operations in September 2020. Complaint in DVI action, ECF Doc. No. 1,[3] ¶15. Unfortunately, LBT and its affiliate LBR badly bungled the process of recommencing refinery operations. Between February 4, 2021 and May 12, 2021, there were at least four releases of emissions from the refinery lasting at least eleven days that had "immediate and significant adverse

---

[2] The "MARPOL permit" refers to a permit issued by the Virgin Islands Department of Planning and Natural Resources pursuant to its delegated authority under the Clean Air Act to regulate—and authorize—activities in the Virgin Islands that result in certain emissions to the atmosphere. The production of petroleum products under the MARPOL permit is generally viewed as "environmentally friendly" because it allows ocean-going vessels to dramatically reduce the amount of sulfur released to the atmosphere during their operations as required by the MARPOL Convention.

[3] This ECF document refers to the document number assigned in DVI Case No. 1:21-cv-00264.

impacts" on residents of St. Croix. *Id.*, ¶3.

In addition to its dramatic impact upon the residents of St. Croix, the series of pollution incidents altered the relationship between LBT and the refinery. LBT's affiliate, LBR, was faced with four different class actions over the pollution incidents and significant exposure to EPA fines along with other economic issues that threatened its viability as an ongoing entity. Accordingly, LBR declared Chapter 7 bankruptcy and most of the refinery assets were sold in the ensuing bankruptcy auction to Port Hamilton.

Now that LBT is no longer affiliated with the refinery owner, it suddenly has a problem with the potential emissions from its neighbor that it was perfectly content to live with when LBT and the refinery were corporate affiliates.

## ARGUMENT

### I. LBT IS JUDICIALLY ESTOPPED FROM TAKING A POSITION CONTRARY TO THE POSITION IT SUCCESSFULLY URGED IN 2018.

LBT successfully argued to EPA in 2018 that the refinery had been idled since 2018. It now seeks to intervene to seek "the same relief as the federal government." LBT motion, Doc. No. 17-1 at 10. EPA is seeking to

uphold its 2022 EPA Determination that the refinery has been shut down rather than idled since 2012. Thus, LBT is asserting a position that is incompatibly inconsistent with the position it previously took with EPA.

"Judicial estoppel, sometimes called the 'doctrine against the assertion of inconsistent positions,' is a judge-made doctrine" that bars a litigant from asserting a position that is inconsistent with one he or she previously took before a court *or agency*." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996) (emphasis added). It is designed to prevent litigants from playing "fast and loose with the courts." *Id.*

"Unsurprisingly given its name, judicial estoppel is often articulated as applying to 'judicial' proceedings." *Rissetto v. Plumbers & Steamfitters Loc. 343*, 94 F.3d 597, 604 (9th Cir. 1996). "The doctrine of judicial estoppel is not, however, limited to preventing inconsistencies in the judicial context exclusively." *Health Advoc., Inc. v. Health Advocs., LLP*, No. CV 03-4277, 2005 WL 8176688, at *3 (E.D. Pa. July 14, 2005). The doctrine also applies to inconsistencies in positions previously taken with administrative agencies. *See Detz v. Greiner Indus.*, 346 F.3d 109, 116 (3d Cir. 2003) (prior inconsistent representations made before the Social

6

Security Administration) (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999)). *See also Health Advoc., Inc.*, 2005 WL 8176688, at *3 (collecting cases from the Federal, Second, Sixth, Seventh, and Ninth circuits holding that judicial estoppel applies when a party has taken a contrary position in an administrative proceeding).

This Court applies a "multi-factor analysis" when considering whether to apply judicial estopped to bar a litigant from making assertions that are contrary to assertions it has made in previous proceedings. *Detz v. Greiner Indus., Inc.*, 346 F.3d 109, 115 (3d Cir. 2003). The two "main considerations," *id.,* are whether the party's position is inconsistent with a position taken in the same or in a previous proceeding and either or both of the inconsistent positions is made in bad faith. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 501 (3d Cir. 1997). This Court also considers whether the use of judicial estoppel is tailored to address the affront to the court's authority or integrity." *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777–78 (3d Cir.2001).

Here, all of the factors for application of judicial estoppel are present. First, LBT's current position is plainly inconsistent with the position that it took before EPA in 2018.

Second, LBT's reversal can only be explained by bad faith. To begin with, LBT acknowledges that Port Hamilton's refinery "has historically been the biggest customer of [LBT]'s terminal business." LBT Mot. at 14. Yet if LBT is successful in convincing the Court to uphold the 2022 EPA Determination, it's "biggest customer" will have no need for LBT's terminal storage capacity for a minimum of the three years it normally takes to obtain a PSD permit and then recommence operations.[4] Indeed, if LBT succeeds, it may permanently lose its biggest customer.[5] It makes no business sense for LBT to try to hamstring its largest customer for at least three years—and likely forever.

Further evidence of LBT's bad faith is shown by the fact that the exact same concerns it raises to justify intervention existed when it was actively assisting its affiliate LBR as it recommenced refinery operations. LBT had

---

[4] EPA will not even permit Port Hamilton to begin most of the work necessary to recommence operations until after a PSD permit is issued. Between the typical time required for the PSD permitting process and the time needed to do the work that is a prerequisite for recommencing operations, the refinery would not be expected to begin actual operations for three years.

[5] As stated in Port Hamilton's motion in support of expedited review, "If restart is delayed for a period of years, Port Hamilton may have to abandon its restart plans and instead shut down and dismantle the refinery." Doc. No. 9-1 at p.6.

no problem being the neighbor of a refinery either when it was advocating that the refinery had been in idled status since 2012; or in 2020–21 when its affiliate was recommencing operations—under conditions that would create far more emissions than Port Hamilton proposes with its planned refining operations.[6] Similarly, LBT had no objection to being a co-permittee with LBR nor did it have any concerns that LBR's operation of the refinery (at much higher emissions levels than the levels emitted under Port Hamilton's refinery-operations-resumption-plan) would "make it more challenging for [LBT] to receive PSD permits for its own operations in the future." LBT Mot. at 15. Everything about LBT's motion reeks of bad faith.

Third, denying LBT intervention is a narrowly-tailored remedy. EPA will still be the Respondent and able to attempt to justify its reversal of positions without having the affront to this Court of LBT arguing the exact opposite position it successfully urged to EPA.

---

[6] Port Hamilton intended to recommence refining operations under a scenario that would not employ the three refining units that LBR proved unable to operate without contaminating the residences downwind from the refinery. Under Port Hamilton's plan, the emissions from the refinery when it recommences operations would be 79% less than the levels authorized by the "MARPOL permit" under which it would operate.

## II. LBT IS BARRED BY AN ORDER OF THE BANKRUPTCY COURT FROM INTERVENING IN THIS ACTION.

In its order approving the sale of LBR's assets, the judge overseeing the LBR bankruptcy had the foresight to realize that with an entity unrelated to LBT owning the refinery but sharing many environmental permits, there was a possibility that LBT's interests and Port Hamilton's interests would diverge. Thus, the bankruptcy judge included in his order the following language:

> 35. Shared Authorization. Notwithstanding anything to the contrary in this Order or the APA, (I) *Purchaser and the LBT Entities shall work in good faith with one another and use commercially reasonable efforts to take any actions necessary to maintain any* licenses, certificates, *permits*, orders, approvals, consents, determinations, variances, franchises, entitlements, approvals or other authorizations from any governmental authority *that are shared by and between the LBT Entities and the Debtors and that are acquired or used by Purchaser as a result of the Sale*; and (ii) nothing in this Order or the APA imposes any obligation of the Purchaser or the Debtors to comply with applicable regulatory or governmental laws or authorities on the LBT Entities.

*See* Exh. 7 to LBT's motion to intervene (Sale Order) at 34 (ECF Doc. No. 17-2 at 650) (emphasis added).

EPA's 2022 Determination, if upheld, will require Port Hamilton to

obtain a PSD permit that will substantially reduce the levels of emissions that are authorized under Port Hamilton's MARPOL permit—a permit shared with LBT. LBT's attempt to intervene and uphold the EPA 2022 Determination is contrary to the bankruptcy court's order. This Court should not allow LBT to intervene when the results it seeks is barred by the bankruptcy court's order.

### III.  LBT'S PRESENCE IN THIS PROCEEDING WILL NOT ASSIST THE COURT.

This is a fact-based challenge to the 2022 EPA Determination. EPA states in the 2022 EPA Determination that "[t]he information regarding the scope of the restart of the Refinery has changed substantially since [the 2018 EPA Determination] and EPA no longer supports this view." 2022 EPA Determination, Attachment 1, at 2. The EPA Record, not LBT's spin, will determine whether this Court concludes that EPA's actions were contrary to law or arbitrary and capricious. LBT can bring nothing to the table that will assist the Court in that process that will not already be at the table in the form of the EPA Record.

LBT brings nothing to this proceeding other than confusion. How can a party that successfully argued that the refinery had been idled since 2012 be of assistance when it now seeks to argue the opposite conclusion

based upon the same facts? Does LBT intend to argue that its affiliate's resumption of operations in 2020–21 was illegal because LBR had failed to obtain a new PSD permit? LBT's presence in this expedited proceeding will serve only to create ancillary issues that are not related to the issue under review and can only cause delay.

## CONCLUSION

LBT is judicially estopped from asserting the position it now seeks to take upon intervention. It is judicially barred from intervening due to the bankruptcy court sale order. And LBT's presence will not be of assistance to the Court and can only cause delay and confusion. The Court should deny LBT's motion.

Respectfully submitted,

**ANDREW C. SIMPSON, P.C.,**
Counsel for Port Hamilton Refining and Transportation, LLLP

Dated: February 21, 2023

   /s/ Andrew C. Simpson
Andrew C. Simpson
VI Bar No. 451
2191 Church Street, Suite 5
Christiansted, VI 00820
Tel: 340.719.3900
asimpson@coralbrief.com

Of counsel:

| | |
|---|---|
| Matthew W. Morrison<br>PILLSBURY WINTHROP SHAW PITTMAN LLP<br>1200 Seventeenth Street, NW<br>Washington, DC 20036<br>202.663.8036<br>matthew.morrison@pillsburylaw.com | Julie R. Domike<br>BABST \| CALLAND<br>505 9th St. NW<br>Suite 602<br>Washington, DC 20004<br>202.853.3453<br>jdomike@babstcalland.com<br><br>Gary E. Steinbauer<br>BABST \| CALLAND<br>Two Gateway Center<br>Pittsburgh, PA 15222<br>412.394.6590<br>gsteinbauer@babstcalland.com |

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed with this Court's electronic filing system on February 21, 2022, which will provide electronic notice to the parties below of the filing.

| | |
|---|---|
| HEATHER E. GANGE<br>U.S. Department of Justice<br>Environment and Natural Resources Division<br>Environmental Defense Section<br>P.O. Box 7611<br>Washington, D.C. 20044<br>Telephone No: (202) 514-4206<br>Heather.Gange@usdoj.gov<br><br>*Counsel for Respondent* | Corinne Snow<br>VINSON & ELKINS LLP<br>1114 Avenue of the Americas<br>32nd Floor<br>New York, NY 10036<br>Phone: (212) 237-0157<br>Email: csnow@velaw.com<br><br>*Counsel for proposed intervener Limetree Bay Terminals, LLC* |

Michael Ray Harris
Associate Professor of Law
Environmental Justice Clinic
Vermont Law & Graduate School
PO Box 96, 164 Chelsea Street
South Royalton, VT 05068
(802) 831-1364
mrharris@vermontlaw.edu

*Counsel for proposed intervenors*
*St. Croix Environmental Association,*
*Sierra Club, and Center for Biological Diversity*

                                                                   /s/ Andrew C. Simpson