IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

PORT HAMILTON REFINING AND TRANSPORTATION, LLLP,

    *Petitioner*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY,

    *Respondent.*

No. 23-1094

## LIMETREE BAY TERMINALS, LLC D/B/A OCEAN POINT TERMINALS' REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO INTERVENE

This case involves the United States Environmental Protection Agency's ("EPA") determination that Port Hamilton Refining and Transportation, LLLP ("PHRT" or "Petitioner") must apply for an *additional* new air permit for its own operations separate and apart from the existing air permits that currently apply to the Refinery's operations. EPA made that determination based on a *new* administrative record, which emphasized actions and factors that post-date its 2018 determination ("2018 Letter") that the same Refinery did not require a similar permit.

Contrary to the arguments raised by PHRT, Limetree Bay Terminals, LLC, now doing business as Ocean Point Terminals ("OPT") should not be judicially

estopped from intervening based on OPT's position in a separate, prior EPA determination; nor is it barred from doing so by a bankruptcy court order provision addressing maintaining *existing permits*. As in many other record-review cases where this Court has previously granted intervention, OPT's intervention will be useful because of its knowledge of the subject site, relevant history, and practical implications of the Court's decision. OPT meets the standard for intervention and respectfully requests that the Court grant its motion.

I.  **ARGUMENT**

   A.  **OPT meets the standard for intervention and Petitioner does not argue otherwise.**

Petitioner does not address the standard for intervention or dispute that OPT meets this standard. Instead, Petitioner appears to take issue with positions that it thinks OPT may take in this case, but in doing so Petitioner incorrectly presumes that OPT will defend or address all aspects of EPA's decision. Proposed intervenors "are entitled to intervene as to specific issues so long as their interest in those issues is significantly protectable," even if they "may not have an interest in the merits of the claims pending between" the parties. *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 368 (3d Cir. 1995). As its motion demonstrates, "OPT has a direct and substantial interest in this case as the Title V Permittee, party to the Consent Decree, Emergency Order, and Joint Stipulation, and a business whose operations would be directly impacted by air emissions or an

2

emissions incident at the Refinery," an interest "that may be impaired by [this case's] disposition." OPT Mot. Part II ¶ 20, ECF No. 17-1. To the extent Petitioner contests OPT taking specific positions on specific matters that relate to the merits of Petitioner's dispute with EPA, such arguments are irrelevant to the question of OPT's intervention and should instead be addressed if and when OPT raises such arguments in a merits brief.

  **B. OPT should not be judicially estopped from intervening in this case.**

Petitioner argues that OPT is judicially estopped from intervening because OPT "is asserting a position that is incompatibly inconsistent with the position it previously took with EPA," PHRT Response at 5-6, ECF No. 21-1, based on a letter OPT sent to EPA nearly five years ago to explain why the Refinery had not been permanently shut down. *Id.* at 3.

Notably, the agency decision at issue here is an entirely new, separate, and fact-bound determination by EPA that the Refinery now requires a PSD permit. True, the determination discusses the history of the Refinery, including during the time of OPT's ownership, which is part of the reason that OPT has an interest in intervening here. But in reaching the determination at issue in this case, EPA's analysis repeatedly noted events that occurred *after* 2018 which altered its determination. *See, e.g.*, ECF No. 1-3 at 12 ("The Refinery has now been shut down for an additional eighteen months. EPA's understanding is that restarting the

3

Refinery would require significant construction and other physical activities that are in addition to the substantial capital and operational investments that Limetree completed before it attempted to restart the refining operations"); *id.* at 13 (noting that audit reports submitted to EPA in 2021 contain additional facts germane to the analysis); *id.* at 25 (noting PHRT has not applied for Clean Water Act permit); *id.* at 27-28 (noting additional maintenance concerns after PHRT took ownership of the Refinery); *see also* PHRT Response at 11. The Refinery is now under new ownership, and the record before the agency has unquestionably changed since EPA's 2018 Letter. EPA reached a new determination based on a new set of facts.

The judicial estoppel that Petitioner requests is an "extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir. 1996) (alteration and citation omitted).

> Judicial estoppel may be imposed only if: (1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity.

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777-78 (3d Cir. 2001). This Court has explained that "judicial estoppel 'is often the harshest remedy' that a court can impose for inequitable conduct," which may not be invoked unless "no sanction established by the Federal Rules or a pertinent statute is up to

the task of remedying the damage done by a litigant's malfeasance." *Id.* at 784 (citation omitted). Because the doctrine as "an exercise of a court's inherent power to sanction misconduct," *id.*, it should be "exercised with restraint and discretion," *id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). It is hard to see how such a drastic remedy would be appropriate here, and OPT's intervention motion certainly does not come close to reaching the exceedingly high bar for "a miscarriage of justice" or a sanctionable misconduct. The Court should not invoke the doctrine for several reasons.

First, OPT's request to intervene is not "irreconcilably inconsistent" with its position in 2018. *See Montrose*, 243 F.3d at 777. As noted above, the case at hand involves an entirely separate analysis and administrative record from the one underlying EPA's 2018 Letter, and the determination challenged here repeatedly cites events post-dating that 2018 determination. By contrast, judicial estoppel is intended to police statements or positions that are "irreconcilably inconsistent" and may lead to inconsistent judgments. *See, e.g.*, *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 78 (1st Cir. 1997) ("[A] party cannot take one position in an underlying administrative proceeding and then disclaim it in a subsequent suit arising out of the agency proceedings."). But here OPT's positions—even assuming OPT has somehow taken a position by seeking to intervene—reflect the fact that several years separate the two EPA decisions, during which time subsequent events have

5

influenced both EPA and OPT's positions on the matter. *See* OPT Mot. Part II ¶¶ 9-20. Petitioner's argument is also premature, as thus far OPT has only asked to *intervene* in a case whose outcome will clearly impact OPT, and any purported irreconcilable inconsistency in OPT's prior and future positions can be addressed if and when there is such a conflict.

Second, OPT has not acted in bad faith or misled the court. *See Montrose,* 243 F.3d at 777. There is no concern that the Court might not know about OPT's position in the 2018 Letter—indeed, the very EPA decision at issue in this case recounts the history of that prior determination, including the fact that OPT and prior Refinery owner LBR took the position that a PSD permit was not required prior to restart. ECF No. 1-3 at 10. And OPT likewise noted EPA's prior determination in its intervention motion. OPT Mot. Part I ¶ 24; *id.* Part II ¶ 22. Because "[j]udicial estoppel is only appropriate when the inconsistent positions are tantamount to a knowing misrepresentation to or even fraud on the court," it would be inappropriate here. *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 324 (3d Cir. 2003) (internal quotation marks and citation omitted); *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 274 (4th Cir. 2003) ("[J]udicial estoppel exists to deter the use of facts from other litigation to manipulate a subsequent court that is unfamiliar with the prior factual positions assumed by the litigants.").

As to Petitioner's allegations that OPT's intervention can "only be explained by bad faith," PHRT Response at 8, OPT has already clearly laid out why, as a Title V permittee, party to the Consent Decree, Emergency Order, and Joint Stipulation, and neighboring facility, it has an interest in the air permitting at the Refinery that it no longer has any ownership or control over or any corporate affiliation with the current owner, it is interested in the disposition and impact of this case. *See* OPT Mot. Part II ¶¶ 4-9.

In addition, judicial estoppel is generally inappropriate where the initial proceeding was a nonadjudicatory, nonadversarial proceeding. *See Whiting v. Krassner*, 391 F.3d 540, 543 (3d Cir. 2004) ("Judicial estoppel prevents parties from taking different positions on matters in litigation to gain advantage."); *see also Atl. Limousine, Inc. v. NLRB*, 243 F.3d 711, 715 n.2 (3d Cir. 2001) (rejecting arguments to "craft[] a theory of estoppel based upon sworn statements in a tax return"); *see also* 18B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4477 (3d ed. WL Update 2022) ("As the label implies, judicial estoppel arises only from a position taken in an adjudicatory proceeding."); *id.* § 4477.2 ("A position asserted before a government official in nonadjudicatory proceedings . . . should not support 'judicial' estoppel."). There is no colorable argument here that EPA's 2018 Letter, where PHRT derives OPT's purported inconsistent position, constituted an

adjudicative proceeding replete with the typical procedural protections and adversarial process.

And the cases cited by PHRT for the point that judicial estoppel applies to agency proceedings are largely inapposite. These cases pertain to the unique situation where a litigant advances statutory claims contrary to statements of objective fact made in applications for disability benefits. *See Detz v. Greiner Indus.*, 346 F.3d 109, 118-19 (3d Cir. 2003); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 501-03 (3d Cir. 1997). To assess those factual inconsistencies at the summary judgment stage for the statutory claims, this Court has adopted a modified analytical framework for judicial estoppel in line with the Supreme Court's analogous decision in *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), because "the alleged prior inconsistencies affect subsequent statutory claims." *See Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 272 (3d Cir. 2012). Here, Petitioner has given no reason to conclude that OPT's purportedly inconsistent legal position (rather than factual statement) regarding EPA's 2018 Letter will bear in any way on Petitioner's claims against EPA regarding the agency's November 2022 decision.

**C.    The bankruptcy court's sale order provision to maintain existing shared permits does not preclude OPT from intervening.**

Petitioner argues that OPT is barred from intervening based on a provision in the bankruptcy court's sale order stating that:

> Purchaser and the LBT Entities shall work in good faith with one another and use commercially reasonable efforts to take any actions necessary to maintain any licenses, certificates, permits, orders, approvals, consents, determinations, variances, franchises, entitlements, approvals or other authorizations from any governmental authority that are shared by and between the LBT Entities and the Debtors and that are acquired or used by Purchaser as a result of the Sale . . . .

PHRT Response at 10 (quoting Ex. 7 (Sale Order) at 34, ECF No. 17-2 at 650). This argument misreads or misunderstands the sale order.

By its own terms, the provision is limited to *maintaining* permits that *are shared* and that Petitioner acquired through the bankruptcy sale. Petitioner does not, and cannot, argue that the *new* PSD permit that EPA has directed Petitioner to apply for falls within this provision or that OPT is somehow affirmatively bound to support or not oppose positions that Petitioner takes with respect to new permits or other issues that impact OPT. Instead, Petitioner argues that OPT's intervention would somehow run afoul of this provision because PHRT speculates that this new PSD permit would reduce the air emissions authorized under a separate permit that Petitioner alleges to share with OPT. *See* PHRT Response at 10-11. The plain language of the sale order provision clearly does not cover such a distorted reading.

And notably, the sale order was written against the backdrop of EPA's indication that the purchaser (*i.e.*, Petitioner) may need a new PSD permit to restart. But the language cited by Petitioner makes no reference to any obligations regarding such permits. Specifically, when Petitioner was bidding on the Refinery during the

9

bankruptcy proceeding, EPA placed a letter in the reading room three months before the sale order was issued that stated "[a] prospective purchaser may also be required to obtain a [PSD] permit under the Clean Air Act to restart the refinery" and pointed out that "EPA has required PSD permits for restarting long-dormant facilities that qualify as major stationary sources." ECF No. 1-3 at 6. *See also* Ex. 7 (Sale Order), ECF No. 17-2 at 627. With this context in mind, the provision cannot be read to prevent OPT's intervention here. And even setting aside the merits of this strained reading, Petitioner cites no law indicating how this provision would prevent OPT from intervening here.

### D. OPT's intervention would be useful to the Court.

Again without citing any cases, Petitioner argues that OPT should not be allowed to intervene because this is a record review case. PHRT Response at 11-12. But this Court has repeatedly allowed parties to intervene in record review cases. *E.g.*, Order Granting Motion to Intervene, *Del. Riverkeeper Network v. Sec'y of Pa. Dep't of Env't Prot.*, No. 17-1533 (3d Cir. Mar. 17, 2017), ECF No. 003112565510 (allowing pipeline company holding permits to intervene in a suit challenging EPA's permit approval); *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 968, 974 (3d Cir. 1998) (allowing potential contract winners to intervene in a suit challenging the Forest Service's tree cutting project approval); *Sw. Pa. Growth All. v. Browner*, 121

F.3d 106, 118 (3d Cir. 1997) (considering intervenor's argument that EPA's final rule was invalid because EPA did not comply with the Regulatory Flexibility Act).

Petitioner's arguments regarding any "confusion" OPT's participation could cause is again premature, as OPT has not raised any "ancillary issues" and is instead focused on ensuring that it is able to protect its interests in a case that may have direct implications for the operations of the Refinery that is the subject of a Title V Permit, Consent Decree, Emergency Order, and Joint Stipulation to which OPT is a party. OPT Mot. Part II ¶ 1. And while OPT believes its knowledge of the site and its history will be helpful to the Court, it notes that this is not one of the factors under Rule 24 for intervention as of right. Because OPT does clearly meet the Rule 24 factors, its intervention should be granted.

## II.   CONCLUSION

For the reasons set forth above and as explained in OPT's Motion to Intervene, OPT respectfully requests that this Court grant OPT leave to intervene as a respondent in this case.

Date: February 28, 2023

Respectfully submitted,

/s/ Corinne Snow
Corinne Snow
  *Counsel of Record*
  New York Bar No. 5364633
VINSON & ELKINS LLP
1114 Avenue of the Americas
32nd Floor
New York, NY 10036

11

Phone: (202) 237-0157
Email: csnow@velaw.com

*Counsel for Movant Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals*

# CERTIFICATE OF COMPLIANCE

1.      This motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2) because it contains 2570 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f) and 27(d)(2).

2.      This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.

February 28, 2023

/s/ *Corinne Snow*
Corinne Snow
   *Counsel of Record*
   New York Bar No. 5364633
VINSON & ELKINS LLP
1114 Avenue of the Americas
32nd Floor
New York, NY 10036
Phone: (202) 237-0157
Email: csnow@velaw.com

*Counsel for Movant Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals*

# CERTIFICATE OF SERVICE

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure, I hereby certify that on February 28, 2023, I electronically filed the foregoing *Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals' Reply in Support of its Motion for Leave to Intervene*, with the Clerk of the Court for the U.S. Court of Appeals for the Third Circuit by using the appellate CM/ECF system, and served copies of the foregoing via the Court's CM/ECF system on all ECF-registered counsel.

February 28, 2023

*/s/ Corinne Snow*
Corinne Snow
   *Counsel of Record*
   New York Bar No. 5364633
VINSON & ELKINS LLP
1114 Avenue of the Americas
32nd Floor
New York, NY 10036
Phone: (202) 237-0157
Email: csnow@velaw.com

*Counsel for Movant Limetree Bay Terminals, LLC d/b/a Ocean Point Terminals*