# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| PORT HAMILTON REFINING AND TRANSPORTATION, LLLP, | ) ) ) | |
| *Petitioner*, | ) ) ) | |
| v. | ) ) | Case No. 23-1094 |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) ) | |
| *Respondent*. | ) ) | |

**REPLY TO PETITIONER'S OPPOSITION TO ST. CROIX ENVIRONMENTAL ASSOCIATION, SIERRA CLUB AND CENTER FOR BIOLOGICAL DIVERSITY'S MOTION TO INTERVENE AS RESPONDENT**

**A.    In this case, PHRT's ownership alone does not change the threat that restarting the Refinery, absent a PSD Permit, poses to Movants, their members, and the people of St. Croix.**

PHRT argues that the Court, EPA, Movants, and everyone else should completely disregard, not only the long history of health and environmental hazards inflicted by the Refinery, but also the well-known condition of the Refinery as it sits shuttered today. As documented by EPA, PHRT has assumed control of an inadequately inspected, poorly maintained, and heavily corroded facility. EPA PSD Determination at A1, 17-20. The inadequate maintenance of the Refinery culminated in its disastrous restart in 2021. This event demonstrates the harms that the Refinery is capable of inflicting on the St. Croix community if it is restarted again this year.

Of course, PHRT claims that it "has no intention of repeating the mistake of its predecessors." Opposition to Motion to Intervene (ECF 23) at 5 (hereinafter, "MTI Opp."). A change in ownership alone, however, does not reset the condition of a dilapidated and dangerous refinery. Moreover, nothing in the record before the Court demonstrates that PHRT plans to conduct itself differently. To the contrary, like its predecessor, PHRT is rushing toward restarting the facility and fighting against having to first comply with the PSD provisions of the CAA.

We know from events that have just recently happened that PHRT's ownership of the Refinery so far does not "differ substantially" from those of its predecessors. Petitioner assumed control of the Refinery in January 2022. EPA PSD Determination at A1, 19. On August 4th, 2022, a smoldering fire broke out at the Refinery's coke piles. *Id*. The fire raged until it was suppressed on August 26th. EPA found that poor maintenance was the likely cause of the fire. *Id*. Proper maintenance of the coke piles would have required "among other things, water spraying combined with turning of the coke and air circulation via fans, and inspections." *Id*. One day after the fire was put out, PHRT finally submitted to the EPA a plan to begin maintenance activities. This led the EPA to conclude that for approximately one year, PHRT—as with its predecessor Limetree—had done no maintenance on the coke piles. *Id.* at 20. Moreover, PHRT must have been aware of the "dire state and poor maintenance of the facility at the time of transfer" based on its purchase price of $62 million for a Refinery that Limetree had recently invested $4.1 billion in. *Id*.

As William Shakespeare tells us in *The Tempest*, the past **is** a prologue—as in this case history **does** set the context for the present. As such, Movants and their members cannot accept PHRT's claim that it intends to be a different

kind of owner of this Refinery. PHRT knowingly acquired an operationally deficient facility, and, so far, has done little to correct that Refinery's conditions of poor maintenance and hazardous corrosion. The current condition of the Refinery is no different from the "historical conditions" that Petitioner contends it should not be held responsible for in this litigation. The Court too should reject this contention and side with the already overburdened community of St. Croix. It should do so by allowing Movants to participate in this litigation to argue for implementation of safer standards under the CAA before the residents once again find oil raining down on their homes, schools, and places of work.

**B.     If the Refinery is restarted this year without first obtaining a PSD Permit, Movants' members, and the people of St. Croix, face specific injury to their health and property.**

PHRT casts the Movants' interests in this litigation as "sweeping generalities" related to refinery operations. MTI Opp. At 5. Nothing could be further from the truth. Certainly, it is true that the Movants are concerned about the long-term environmental and climate impacts associated with operating large oil refineries, including the one on St. Croix. But what is driving Movants to intervene in this specific case is to prevent further mis-operation of a refinery that for decades has impacted the health and property of so many individuals living on the island.

This history of emitting harmful pollutants into the community is fully detailed in the declarations of Ms. Hayes, Mr. Cotton, and Ms. Valiulis. These are individuals who saw oil and hazardous substances rain down into neighborhoods where they live, work, go to school, socialize with family and friends, and recreate. Notably, these concerns are not limited to just the

declarants. Indeed, as Ms. Hayes states, after the events in 2020-21, she volunteered to record the stories of others impacted by the Refinery. As she testifies:

> Resident after resident told us of the impact these events had on them and their families even months after the releases occurred. People vomiting because of the odors and contaminated water. People falling down due to weakness. Friends and family getting sick in various ways, even deaths. And of course, not being able to collect clean water in cisterns that had been so contaminated from oil falling from the sky. Gardens and soil around homes that people were afraid to use.

Hayes Decl. at ¶¶12-14.

PHRT's refusal to even acknowledge these stories should raise significant concern as to whether they even understand the relationship between the Refinery and the people of St. Croix. Indeed, PHRT seems completely unaware that the St. Croix Environmental Association has for several years advocated on behalf of those impacted by the Refinery. Valiulis Decl. at ¶¶ 7, 20, 26-32. In addition, all three Movants have consistently advocated before EPA, including within the Plantwide Applicability Limit permit process, for the long-overdue determination that the only way the Refinery can ever be safely restarted is to require it to comply with the PSD provisions of the CAA. *Id.* at 26-32; *see also* Sakashita Decl. at ¶¶ 15-19.

 In this regard, PHRT also significantly skews both the scope of issues raised by this Petition for Review and the role the Movants played since 2018 in advancing EPA's position on PSD applicability to the Refinery. PHRT argues that this case asks the Court only to address "straight-forward issues of statutory construction" and limited "fact-specific" issues that only it and EPA have unique knowledge on. The truth is that EPA's PSD determination turned

on the detailed consideration of the Refinery's history and the affected community on St. Croix, as well as an exhaustive evidenced-based examination of the six (6) *Monroe* factors that make up the heart of the agency's Reactivation Policy. It was the Movants who objected when EPA allowed the Refinery to restart as an existing air pollution source and Movants have maintained throughout that a PSD permit is required. Valiulis Decl. at ¶¶ 7, 20, 26-32. And while EPA does not identify the names of those that submitted comments on, or participated in, this decision, it is clear from the record EPA provided the Court, that the agency responded to a significant number of comments from the Movants and their members. *See* PHRT APPX 166-193.

In short, Movants and their members have a very specific interest in this litigation. They represent individuals that comprise the community of St. Croix impacted by the Refinery over time, and who fear that its restart will lead to more public health concerns, property damage, medical expenses, and the degradation of the island's environment. These truths can never be changed by simply ignoring the witness of those impacted or the history of advocacy surrounding the operation of the Refinery.

### C.     Movants' interests are not adequately represented by EPA.

PHRT also argues that even if Movants have an interest in this litigation, their interests are either adequately represented by EPA or can be protected by participating as *amicus curiae.* As to the latter, traditionally *amici* play "only a limited role in the litigation of important social issues." *See* Michael K. Lowman, *The Litigating Amicus Curiae: When Does the Party Begin After the Friends Leave?*, 41 Am. U. L. Rev. 1243, 1283 (1992). Some courts, in fact,

explicitly disallow *amicus* participation if the party offers "a partisan, rather than impartial view." *See Leigh v. Engle*, 535 F. Supp. 418, 420 (N.D. Ill. 1982); *accord Am. Coll. of Obstetricians & Gynecologists v. Thornburgh*, 699 F.2d 644, 645 (3d Cir. 1983). To these courts, "*amici curiae* should be disinterested friends of the court, while intervenors must have sufficient interest in the dispute to be a party." *See* Helen A. Anderson*, Frenemies of the Court: The Many Faces of Amicus Curiae,* 49 U. Rich. L. Rev. 361, 403 (2015).

Moreover, *amici* are usually restricted "to providing information to the courts, raising jurisdictional and other important issues overlooked by the parties, assuring the presentation of [a] complete factual scenario, and suggesting potential implications of the court's decision." Lowman, 41 Am. U. L. Rev. at 1258–59. They cannot "fil[e] pleadings, enforc[e] consent decrees or judgments, request[ ] rehearings, or appeal[ ] a case in which [they] participated." Id. at 1259–60. In short, they do not have the same ability to control their destinies in the litigation as do intervenors, who become *bona fide* parties to the proceedings. *Id.*

Regarding EPA representing Movants interests, PHRT correctly cites to *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) for the proposition that it is presumed that a government entity charged by law to represent a national policy also adequately represents concerns of a public interest group that **<u>closely parallel</u>** those of the agency. Here, however, EPA is not specifically addressing national policy, but application of the law to a specific refinery. Indeed, over the past 5 years, EPA's position on application of the Reactivation Policy has changed, and for a good amount of this time was clearly not aligned with the interest of Movants and their members.

Moreover, PHRT ignores that the focus in *Kleissler* is on whether the proposed intervenor's interests in the litigation mirror that of the agency or are narrower and more personal to the intervenor. *Id*. In that case, the court granted the motion to intervene of the school districts and municipalities. The court found that the relief being sought by the plaintiffs—an injunction of certain logging until the Forest Service complied with the National Environmental Policy Act—would have an immediate, adverse financial effect on Movants, who depend on funding from local logging projects. *Id*. at 972-73. In such cases, this Circuit has held that the burden to show inadequate representation by the government is "comparatively light." *Id.* at 972.

Here, the Refinery sits in an environmental justice community already burdened with sources of industrial pollution. Operation of the Refinery in non-compliance with the PSD provisions of the CAA has been demonstrated to be cause of public health concerns, private property damage, local water contamination, and potential long-term medical expenses. Valiulis Decl. at ¶¶ 11-15, 22, 33-34; Hayes Decl. at ¶¶ 10-20; Cotton Decl. at ¶¶ 7-16. Certainly, Movants have an equally compelling set of personal interests in the litigation as in *Kleissler*. This is particularly true where, as here, EPA will be called upon to defend its internal decisionmaking process from 2018. *See also* Order on Motion to Intervene*, Chemours Co. v. Administrator, U.S. EPA,* No. 22-2298 (3d Cir. Feb. 6, 2023).

///
///
///

## CONCLUSION

For these reasons, and those contained in Movants' February 13, 2023, Motion to Intervene, we ask the Court to grant intervention under Federal Rule of Appellate Procedure 15(d).

March 2, 2023

Respectfully submitted,

s/Michael Ray Harris
Michael Ray Harris
Associate Professor of Law
Environmental Justice Clinic
Vermont Law & Graduate School
PO Box 96, 164 Chelsea Street
South Royalton, VT 05068
(802) 831-1364 (main)
(802) 831-1631 (fax)
mrharris@vermontlaw.edu

Rajeev Venkat (admission pending)
Student Attorney
Environmental Justice Clinic
Vermont Law & Graduate School
PO Box 96, 164 Chelsea Street
South Royalton, VT 05068
(802) 831-1364 (main)
(802) 831-1631 (fax)
RajeevVenkat@vermontlaw.edu

*Counsel for Movant-Respondent-Intervenors St. Croix Environmental Association, Sierra Club, and Center for Biological Diversity*

# CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND TYPE STYLE REQUIREMENTS AND LENGTH LIMITS

Pursuant to Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6), I certify that Cambria, a proportionally spaced serif font, in size 14, in plain, roman style type, with italics for emphasis and case names, was used for this brief. Pursuant to Federal Rule of Appellate Procedure 27(d)(2), I further certify that this motion is 1910 words, excluding the accompanying documents authorized by Rule 27(a)(2)(B), which is within the word limit of 5,200 words.

March 2, 2023                                          Respectfully submitted,

s/Michael Ray Harris
Michael Ray Harris
Associate Professor of Law
Environmental Justice Clinic
Vermont Law & Graduate School
PO Box 96, 164 Chelsea Street
South Royalton, VT 05068
(802) 831-1364 (main)
(802) 831-1631 (fax)
mrharris@vermontlaw.edu

# CERTIFICATE OF SERVICE

 Pursuant to Federal Rule of Appellate Procedure 25(c)(2) and Local Appellate Rule 27.2, I certify that this Motion to Intervene and accompanying Motion Appendix was filed electronically through the court's docketing system. All parties to this case are Filing Users and are served electronically by the Notice of Docket Activity.

March 2, 2023                                   Respectfully submitted,

s/Michael Ray Harris
Michael Ray Harris
Associate Professor of Law
Environmental Justice Clinic
Vermont Law & Graduate School
PO Box 96, 164 Chelsea Street
South Royalton, VT 05068
(802) 831-1364 (main)
(802) 831-1631 (fax)
mrharris@vermontlaw.edu
