ORAL ARGUMENT HELD MAY 24, 2023
PANEL DECISION ISSUED JULY 25, 2023

No. 23-1094

**UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

———————————

PORT HAMILTON REFINING AND TRANSPORTATION, LLLC,

Petitioner,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY,

Respondent.

———————————

ON PETITION FOR REVIEW FROM A DECISION OF THE
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

———————————

**PETITION FOR PANEL REHEARING**

———————————


|  | Assistant Attorney General |
| Of Counsel: | Environment & Natural Resources Div. |
|  |  |
| JOSEPH SIEGEL | HEATHER E. GANGE |
| U.S. Environmental Protection Agency | U.S. Department of Justice |
| Region 2 | Environmental Defense Section |
| 290 Broadway | P.O. Box 7611 |
| New York, NY 10007 | Washington, D.C. 20044 |
|  | (202) 514-4206 |
|  | Heather.Gange@usdoj.gov |

## INTRODUCTION AND SUMMARY

Respondent United States Environmental Protection Agency ("EPA") requests panel rehearing on a limited aspect of the Court's decision in this case (slip opinion attached hereto).  EPA does not seek reconsideration of the Court's vacatur of EPA's determination that the petroleum refinery on the Island of St. Croix ("Refinery") must obtain a Prevention of Significant Deterioration permit under Section 165 of the Clean Air Act ("CAA"), 42 U.S.C. § 7475, prior to resuming refining operations.  Rather, EPA respectfully petitions this Court to remove a non-outcome-determinative portion of the slip opinion at pages 14-15 that is premised on a reading of 42 U.S.C. § 7491 that is incorrect and inconsistent with the Court's previous discussion of Section 7491 in *National Parks Conservation Ass'n v. EPA*, 803 F.3d 151, 154 (3d Cir. 2015) (hereafter "*National Parks*").  EPA additionally requests that the Court correct a few discrete minor misstatements within the statutory and factual background portions of the opinion that have the potential to cause confusion for the regulated community.

## BACKGROUND

### I.      Statutory and Regulatory Background

The CAA's new source review program is a preconstruction review and permitting program for major stationary sources of air pollutant emissions (*e.g.*,

power plants, factories, refineries) that is intended to prevent increased emissions from new and modified sources that might significantly worsen air quality or interfere with efforts to achieve attainment of the NAAQS.  The program requires each new stationary source of air pollution to obtain one of two types of permits depending on whether the geographic area is in attainment with the NAAQS.  The first type of permit, which is at issue in this case, is a Prevention of Significant Deterioration (PSD) permit and applies to certain stationary sources of air pollution to be built in designated "attainment" areas.  The second type of permit is a Nonattainment New Source Review (NNSR) permit and applies to certain stationary sources of air pollution to be built in areas that do not meet the NAAQS.

Entirely separate from the new source review program is a different Clean Air Act program to eliminate manmade visibility impairment in certain national parks and wilderness areas.  42 U.S.C. § 7491.  EPA implements this program, which is referred to as the Regional Haze Program, through regulations promulgated at 40 C.F.R. Part 51, Subpart P.  Under 42 U.S.C. § 7491, those regulations must, among other things, "require[] that each major stationary source *which is in existence on August 7, 1977, but which has not been in operation for more than fifteen years as of such date*, and which … emits any air pollutant which may reasonably be anticipated to cause or contribute to impairment of visibility in any such area, shall procure, install, and operate, as expeditiously as practicable …

the best available retrofit technology." [1] 42 U.S.C. § 7491(b)(2)(A) (emphasis added).

EPA's implementing regulations, which were promulgated in 1980, define such sources as, "any of the following stationary sources of air pollutants, including any reconstructed source, which was not in operation prior to August 7, 1962, and was in existence on August 7, 1977 . . ." 40 C.F.R. § 51.301 (def'ns of "Existing stationary facility" and "BART-eligible facility"); 45 Fed. Reg. 80,084 (Dec. 2, 1980); *see Nat'l Parks* 803 F.3d at 154 ("a stationary source . . . is BART-eligible if it: (1) was in existence on August 7, 1977, but not in operation prior to August 7, 1962 . . .").

In 2005, EPA promulgated "BART Guidelines" to assist states in making BART determinations for their sources. 70 Fed. Reg. 39,104 (July 6, 2005). The BART Guidelines explain how states should identify the start-up dates of their sources, including what it means for a source to be "in existence on August 7, 1977," and "in operation before August 7, 1962." 40 C.F.R. pt. 51, app. Y, § II.A.2.  EPA and States have applied the regulatory definition at 40 C.F.R. §

---

[1]  Best available control technology is commonly referred to as "BART."

51.301 and the instructions in the BART Guidelines in dozens, if not hundreds, of administrative actions.[2]

## II.    Procedural History and the Panel Decision

The Refinery, consisting of a marine terminal and refinery assets, was initially constructed in 1966 and operated by Hess Oil. The Refinery was subsequently operated by HOVENSA until 2012. HOVENSA declared bankruptcy in September 2015. The Refinery was part of HOVENSA's bankruptcy estate and was purchased by Limetree Bay Terminals, LLC ("LBT") in 2016. In November 2018, LBT transferred the refinery assets to a separate entity, Limetree Bay Refining, LLC ("Limetree Bay"). LBT retained the marine terminal.

Limetree Bay and related entities (but not LBT) declared bankruptcy in July 2021. Petitioner Port Hamilton Refining and Transportation, LLC ("Port Hamilton"), and another company that is not a party to this case, purchased the Refinery from Limetree Bay's bankruptcy estate in January 2022.

A month before purchasing the Refinery, Port Hamilton inquired whether the Refinery would require a PSD Permit to resume petroleum refining. Based on

---

[2] For example, in 2012, EPA promulgated a federal implementation plan for the Virgin Islands that determined multiple emission units at the Refinery were BART-eligible because "[t]he emission unit(s) began operation after August 6, 1962, and were still in existence on August 7, 1977." 77 Fed. Reg 37,842, 37,842 (June 25, 2012).

information subsequently provided by Port Hamilton, in November 2022 EPA

issued a final determination that a PSD Permit would be required ("PSD

Determination").  Port Hamilton timely challenged the PSD Determination.  Oral

argument was held in St. Croix on May 24, 2023, and a slip opinion issued on July

25, 2023.

In its opinion, the Court held that EPA exceeded its authority under the

applicable provision of the CAA, 42 U.S.C. § 7475.  Slip Op. at 13-17.  The Court

concluded that the plain text of Section 7475 limits application of the PSD program

to newly constructed or modified facilities, and foreclosed EPA's interpretation

that Section 7475 requires PSD permits for certain facilities that restart after

extended periods of shutdown.  *Id.* at 13.  The Court explained that the "type of

construction that requires a PSD permit is construction commenced after 1977 that

brings a major emitting facility into existence" or that modifies a facility.  *Id.* at 15-

16.

The Court included within its reasoning a comparison of Section 7475 to

Section 7491:

> A different provision of the CAA confirms that Congress
> chose not to apply the PSD program to shutdown facilities
> upon their restart. Section 7491 applies to facilities "in
> existence on August 7, 1977, but which ha[ve] not been in
> operation for more than fifteen years." *Id.* § 7491(b)(2)(A).
> Under that provision, if the out-of-operation facility emits air
> pollutants that impair visibility, the facility must

> install "the best available retrofit technology ... for controlling emissions ... for the purpose of eliminating or reducing" visibility impairment. *Id.* These visibility protections reach—in explicit terms—the same sort of circumstances that EPA contends trigger the need for a PSD permit. That is, § 7491 applies to long out-of use facilities or, as EPA might call them, "shutdown" facilities.

Slip Op. at 14-15.  The Court then concluded that because "Congress chose not to include such explicit terms in § 7475," "[w]e must assume . . . that § 7475 means what it says: stationary sources of air pollution must obtain a PSD permit if they are constructed or modified after 1977." *Id.* at 15.

## **ARGUMENT**

## I.    **The Court's Discussion of 42 U.S.C. § 7491 is Incorrect and Inconsistent with Prior Opinions of this Court and Other Courts of Appeals, As Well As EPA's Long-Standing Implementing Regulations.**

EPA respectfully requests that the Court revise the opinion to eliminate the discussion of Section 7491 and its comparison to Section 7475.  The Court's reading of Section 7491 is incorrect, and as a result, its comparison of Section 7491 to Section 7475 is inapt.  As discussed below, the Court's reading of Section 7491 contradicts the Court's prior opinion in *National Parks*, 803 F.3d at 154 as well as EPA's long-standing regulations implementing the Regional Haze Program at 40 C.F.R. § 51.301.  The Court's discussion of Section 7491 is not outcome-determinative, and thus, EPA requests removal of the discussion without any alteration of the judgment.

The Court's opinion concludes that Section 7491 explicitly regulates facilities that have been "long out-of-use" or "shutdown" for 15 years or more. Slip Op., at 14-15.  From that conclusion, the opinion goes on to state that, "Had Congress intended for the PSD program to apply to shutdown facilities, it would have used the clear language it included in 7491."  Slip Op., at 15.

EPA respectfully submits, however, that 42 U.S.C. § 7491(b)(2)(A) does not address "shutdown facilities" at all.  Specifically, 42 U.S.C. § 7491(b)(2)(A) in pertinent part applies to a major stationary source "in existence on August 7, 1977, but which has not been in operation for more than fifteen years **as of such date**" (emphasis added).  In the slip opinion in this case, however, the Court appears to overlook the pertinent limiting phrase "as of such date," which informs the proper construction of Section 7491(b)(2)(A).[3]

In its previous decision in *National Parks*, which reviewed EPA's approval of certain BART determinations made by the State of Pennsylvania, this Court correctly described Section 7491(b)(2)(A) as applying to facilities "in existence on August 7, 1977, but not in operation prior to August 7, 1962."  *National Parks,* 803

---

[3] As set forth in EPA's long-standing implementing regulations, a "BART-eligible source" is one which, "was not in operation prior to August 7, 1962, and was in existence on August 7, 1977"  40 C.F.R. § 51.301.

F.3d at 154 (citing 40 C.F.R. § 51.301).[4]  This proper reading takes into account the limiting clause "as of such date," which modifies the immediately preceding phrase "for more than fifteen years" consistent with the rule of the last antecedent. *See e.g., Lockhart v. United States,* 577 U.S. 347, 351-52 (2016) (quoting *Barnhart v. Thomas,* 540 U.S. 20, 26 (2003)).  This reading is both consistent with the plain language of Section 7491(b)(2)(A) and with EPA's implementing regulation 40 C.F.R. § 51.301, which the *National Parks* decision applied.  *National Parks,* 803 F.3d at 154.

The slip opinion's mistaken reading of Section 7491, if not corrected, could cause confusion and disrupt EPA's implementation of the Regional Haze Program by causing facilities to question whether the program applies to facilities that have not been shut down for 15 years or more.  EPA therefore respectfully requests that

---

[4]  Every other U.S. Circuit Court of Appeals to consider the issue has opined similarly.  *See Nat'l Parks Conservation Ass'n v. EPA*, 788 F.3d 1134, 1139 (9th Cir. 2015) ("The Act further provides that all implementation plans must require installation of the . . . BART . . . to reduce emissions from certain emission sources that were operational between 1962 and 1977."); *Am. Corn Growers Ass'n v. EPA*, 291 F.3d 1, 5 (D.C. Cir. 2002) ("Under § 169A of the Act, each state must review all BART-eligible sources – meaning all major stationary sources built between August 1962 and August 1977."); *see also Sierra Club v. EPA*, 939 F.3d 649, 656 (5th Cir. 2019) (same); *Phoenix Cement Co. v. EPA,* 647 F. Appx. 702, 705 (9th Cir. 2016); *St. Marys Cement Inc. v. EPA*, 782 F.3d 280, 283 (6th Cir. 2015) (same); *WildEarth Guardians v. EPA*, 770 F.3d 919, 935 (10th Cir. 2014) (same); *North Dakota v. EPA*, 730 F.3d 750, 756 (8th Cir. 2013) (same).

the Court excise from the opinion the language that applies that mistaken reading. Specifically, EPA requests that that the Court remove (1) the paragraph that spans pages 14-15 of the slip opinion, which begins "A different provision…"; (2) the paragraph that immediately follows it, which begins "But Congress chose…," and (3) the sentence at page 16 of the slip opinion, which begins "The absence of such language is especially notable . . ."

## II.    Three Additional Corrections to Misstatements Are Requested to Avoid Unnecessary Confusion.

EPA also respectfully requests correction of certain minor misstatements in the background portions of the opinion.  Although all of these minor errors are *dicta*, they have the potential to cause unnecessary confusion if they remain in the published opinion.

First, EPA requests substitution of the phrase "Nonattainment New Source Review" for the phrase "New Source Performance Standards" on the first and second lines of the first full paragraph on page 7 of the slip opinion, where the court is providing background information on the Nonattainment New Source Review program.  Relatedly, EPA requests substitution of the acronym "NNSR" for the acronym "NSPS" where that acronym appears in two places in this paragraph.  The phrase "New Source Performance Standards" and the accompanying acronym NSPS are generally understood to refer to an entirely different statutory program that was not at issue in this case.  Specifically, this

phrase is used to refer to emission standards for categories of new sources established under 42 U.S.C. § 7411.  *See West Virginia v. EPA*, 142 S. Ct. 2587, 2600-01 (2022).  The phrase "Nonattainment New Source Review" and the acronym NNSR is generally used and understood to refer to the program under 42 U.S.C. § 7503 that is being addressed in the relevant paragraph on Page 7.  *See United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 279 (3d Cir. 2013).  Making these requested corrections in the published opinion would reduce the potential for confusion between the NSPS and NNSR programs.

Second, EPA requests deletion of the word "late" in the second sentence of the second full paragraph on page 11 of the slip opinion, or alternatively, substitution of the word "late" with the word "early."  The sentence in question presently reads: "In late May, the Refinery again emitted excessive sulfur dioxide, prompting closure of the same three schools."  The administrative record, however, establishes that serious incidents occurred at the Refinery in early May on May 5, 6, 7 and 12, 2021.  *See* EPA 463-68, ¶¶ 69-89 (U.S. Appendix, Volume II).

Third, EPA requests substitution of the word "third" with the word "second," on the second line of the first full paragraph of page 12 of the slip opinion   Prior to 2021, the Refinery had been put up for sale only one time before, when it was purchased from a bankruptcy estate by LBT in 2016.  Thus, the

sentence in question as corrected should read, "In July 2021, just two months later, Limetree filed for bankruptcy, and the Refinery was put for sale a second time."

Correcting the latter two factual misstatements relating to the history of the refinery is particularly desirable in view of the fact that there is ongoing separate litigation concerning the Refinery and its history. As set forth in the Statement of Related Cases in EPA's merits brief, related cases include *United States v. Limetree Bay Refining LLC and Limetree Bay Terminals LLC*, No. 1:21-cv-00264 (D.C. U.S.V.I) and *United States and United States Virgin Islands v. HOVENSA L.L.C.*, No. 1:11-cv-00006 (D.C. U.S.V.I.).

## <u>CONCLUSION</u>

For the foregoing reasons, this petition for panel rehearing should be granted**.**

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

DATED:  September 29, 2023       <u>    /s/ Heather E. Gange</u>
HEATHER E. GANGE
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Office: (202) 514-4206
Fax: (202) 514 8865
Heather.Gange@usdoj.gov

*Counsel for Respondent*

Of Counsel:

JOSEPH SIEGEL
U.S. Environmental Protection Agency
Region 2
290 Broadway
New York, NY 10007

## CERTIFICATE AS TO WORD COUNT

I certify that the foregoing PETITION FOR PANEL REHEARING is proportionately spaced, has a typeface of Garamond, 14 points, and contains a total of 2784 words, including footnotes, quotations, certifications, and other portions ordinarily exempted from word counts. I have relied on Microsoft Word's word count feature for the calculation.

## CERTIFICATE OF SERVICE

I certify that on this 29th day of September 2023, the foregoing PETITION was filed electronically via the Court's CM/ECF system, which effected service upon counsel of record.

/s/ Heather E. Gange

Dated:  September 29, 2023

HEATHER E. GANGE, Sr. Attorney
U.S. Department of Justice
Environment & Natural Resources Div.
Environmental Defense Section
P.O. Box 7611
Washington, D.C.  20044-7611
(202) 514-4206